No. 12,889.

THOMAS CONWAY VS. THE NEW ORLEANS CITY AND LAKE RAIL ROAD CO.

The West End passenger train of the defendant company came to its stopping place on Canal street, where it was when plaintiff walked up to the train and turned to the right in order to board the smoking car at the end of the train. An electric car of the defendant company ran on its track, which was near the steam train. The projection of the electric car and the projection of the steam train (toward each other), made very narrow the path upon which plaintiff was walking, with his back to the electric car, by which he was knocked down, and greatly injured.

The rule as to looking and listening had no application. About mid-day, defendant's motorman did not see plaintiff, who was walking in front, in a dangerous position, because of his advancing car. It was his duty to keep a sharp lookout and see pedestrians at the place on their way to board the cars. No gong was sounded and no alarm.

There was no proper care on the part of the employe in charge of defendant's electric car. Such care and diligence must be exercised at dangerous places on a railway to avoid inflicting injury, as the proper manning of a car requires.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*W. H. Rogers* and *G. S. Dodds* for Plaintiff and Appellee.

*Denegre, Blair & Denegre* for Defendant and Appellant.

Argued and submitted December 7, 1898.

FIFTY-FIRST ANNUAL REPORTS, 1899.          147

'Conway vs. N. O. City & Lake R. R.

Opinion handed down December 19, 1898.
Rehearing refused January 23, 1899.

---

The opinion of the court was delivered by

BREAUX, J.   This was an action to recover damages, for the loss of plaintiff's leg.   The defense pleaded the general denial and negligence of plaintiff.

On the day the accident occurred, being All Saints' Day, many persons were visiting the cemeteries.   Plaintiff, about noon, repaired to Canal street, intending to go to the cemeteries.   He left the corner of Baronne street and walked toward the first coach of the defendant's steam train.   Only two witnesses saw the accident; the plaintiff himself and one of the witnesses of the defendant.

The plaintiff testified, as just stated, that he left the corner of Baronne street and walked to the first coach and inquired of the conductor of the Lake steam train, how long it would be before it started. Ten minutes was the answer.   Whereupon plaintiff said: "I will go with you," and walked along the side of the cars near the train, a distance of about one hundred and fifty feet toward the river, for the purpose of boarding a "smoker" car, when he was struck on the right side and was knocked down by an electric car of the defendant and his leg crushed by one of the front wheels, rendering amputation necessary.

The steam car he was about to board stands between Baronne and Carondelet streets on the neutral ground and he was walking between the tracks near the lake train; his back was toward the car that struck him.

The plaintiff also stated that on turning to his right to walk a distance along the train, between the tracks, as before noted, he looked toward the cemeteries to see if any car was coming on the track near the steam train he was about to board, but that when he walked on the neutral ground on the side of the train he did not keep a lookout for the reason that he was not walking on the track of an incoming car.

A rough sketch of the place shows that the track over which the plaintiff walked measured four and a half feet, and that the projecting

148 SUPREME COURT OF LOUISIANA.

Conway vs. N. O. City & Lake R. R.

side of the steam train and electric cars, when opposite one another, measured eighteen inches.

The defendant controverts plaintiff's contention regarding its depot, and avers that the neutral ground is not private property; that it has no control over it.

The facts as relates to defendant's case, as testified to by defendant's witness, who, with the plaintiff himself, are the only witnesses who were present when the accident occurred, are, in substance, that the injury was caused by plaintiff attempting to re-cross the track in front of an incoming car, immediately after he had crossed it, untouched.

In support of the testimony of its witness, defendant's counsel referred to the evidence showing that on the day the accident occurred, owing to the large number of persons, going to or returning from the cemeteries, there were many cars, one hundred per hour, it was said, due at a given point on the track, i. e. one car every thirty-six seconds, and that in the nature of things the plaintiff, in an ordinary walk, would have been struck by some other car ahead of the one which injured him.

The defendant offered the testimony of plaintiff in the Recorder's Court, taken a comparatively short time after the accident, in a case brought there to hold the motorman responsible in a criminal action, for the purpose of proving the contradictory statements of the plaintiff on a vital point of the case.

The evidence of record also shows that defendant's cars were located on Canal street by the city engineer with the approval of the city authorities.

The case was heard by a jury. Their verdict was for eight thousand five hundred dollars in favor of plaintiff. From the verdict and judgment defendant prosecutes the appeal.

We have seen that only two witnesses testified as to how the accident happened: the plaintiff and one of the defendant's witnesses.

They greatly differ in their account.

The first question for our determination is as to which state of facts is correct.

The jury must have found, in order to return their verdict, and the trial judge in signing the judgment, that plaintiff was walking along the car on his way to the smoking car when he was struck.

They heard the testimony and had the opportunity personally, while the witnesses were in their presence, to judge of their credibility.

We are inclined to accept their theory as correct, not only because of the verdict, but, because in reading the testimony of the witnesses it (the verdict) appeared to us to have been correctly returned to the extent stated in our decree.

He (witness for defendant) does not appear to us as having been, as relates to the accident, a very close and careful observer. For instance, he testified that the cars of defendant; the steam dummy on one track, and the electric car on the other, were four or five feet apart when standing together, or when passing each other at the place where the accident occurred, while, in fact, the space between the cars was eighteen inches, nor did he see the plaintiff at the very moment he was struck by the car, but he stated he thought that he was struck by the step of the car.

In our view, the parts of the body wounded, as shown by the testimony of physicians by whom plaintiff was attended, are not corroborative of the statement.

While we have no reason to question the sincerity of the witness, his testimony given in a language in which he was not very conversant, (English was not his mother tongue), has not impressed us to the extent needful to set aside, on this point, the jury's verdict.

The great number of moving trains on the day the accident occurred, and the time table of the defendant company, do not, in our judgment, do away with plaintiff's absolute statement in substance that no other car passed him while he was walking over the 150 feet of ground along the dummy to the smoking car.

This brings us to the question of the contributory negligence *vel non* of plaintiff.

We take it that the statement of plaintiff, that he did not keep a lookout when he went along the neutral ground and walked down the side of the train to board it, is free from error; that the plaintiff had surely walked a distance of about one hundred and fifty feet without turning to see if there was an approaching car on the track to his right as he was walking.

We have given most careful attention to the case from that point of view.

Plaintiff did not, at the moment, suspect the threatening danger. He admits, had he looked he would have had no trouble in seeing the

car approaching him. There was forgetfulness, it is true, on his part, just prior to the accident, in his listlessly walking, as he did; whether it was enough to defeat his right of recovery is a question to be hereafter determined.

Even if one should usually "look and listen," yet, if the servant or agent *should* have seen the danger, it is negligence not to have seen it, and applied himself, as far as possible, to avoid the accident. (Moreover the plaintiff was on the passage way from which passengers board the train. These reasons, we think, take the case out of the rule requiring one "to look and listen.")

We take up for consideration the question of the negligence of the motorman in charge of the car which struck plaintiff. He was at the time looking towards the river, right ahead, he says, and did not see the plaintiff at all, before he heard some one hallooing, whereupon he looked to the north side of his car and saw plaintiff who had been knocked down lying under the car.

Not to have seen this old gentleman, the plaintiff, on a clear day, walking in so dangerous a place, was culpable negligence. It must be borne in mind that passengers were invited to board the train from the space over which plaintiff was walking at the time. It devolved upon the employes of the defendant company to be careful; to run slowly at this place and to look on the entire front of the advancing car, and to exert a timely care toward protecting persons in dangerous proximity to the car.

The space having been reduced as we have already seen, by defendant's car, from four and a half feet to eighteen inches, it devolved upon its employes to be careful and watchful.

It does seen that with ordinary prudence and watchfulness the plaintiff would have been seen by the one in charge of the advancing car. Not to have seen him, in our judgment, makes it evident that there was a want of even ordinary care. If the employe had exercised the care required, the accident might have been avoided. It certanly devolved upon defendant's agents to carefully look.

Any other rule would afford scant protection to the public and would give protection to indifference where there should be watchfulness. There can be no serious objection to the nearness of the tracks to each other. It is unavoidable, none the less if a proximate track gives rise to more than ordinary danger; such danger should be met by corresponding precaution. Instead of care and caution which should have

been exercised in passing the steam train, the record reveals that the motorman never saw plaintiff who was walking in a dangerous path between the cars; that there was no sounding of the gong; nor the least warning of approaching danger.

The defendant and its employes upon such an occasion, particularly when there were many passengers and a number of persons on the street, owed to the public reasonable care and diligence. It was the duty of this motorman to be on the constant lookout when passing the narrow strip between his car and the West End steam train; the stopping place of the latter. The time, about mid-day in November, the place, a dangerous way, where passengers frequently boarded the train which the plaintiff was seeking to board, the duty to be on the lookout and give warning when there was danger of accidents, all made it obligatory upon defendant's motorman to be on the alert. By the use of ordinary care might not the defendant have known that plaintiff was in an exposed position which rendered it proper to give warning and even, at this particular place, check its car a little?

In our judgment, there was not sufficient care and caution taken to avoid the accident, and in consequence, we think that the defendant is liable.

Plaintiff, it is true, was in an exposed position which called for more than ordinary prudence in his movements, yet he was invited to the place where the accident occurred, and notwithstanding a slight inattention, he should not have been subject to the risk of severe injury by the negligence of the workman.

The plaintiff had the right to assume when about to step on the train that he would not be injured by another, an incoming car of the defendant.

The amount of the damages presents the next question before us for determination.

In our judgment it should be less than the amount found by the jury, in order to bring it within the rule which generally governs in fixing damages.

We have, as relates to damages, given due weight to all the facts of the case, and we think that under the circumstances and under our jurisprudence, that the amount should be reduced to six thousand dollars.

For reasons assigned, it is ordered, adjudged and decreed, that the judgment appealed from be amended by reducing the amount of the

verdict and judgment herein rendered in favor of the plaintiff from eight thousand, five hundred dollars to six thousand dollars, with interest from date of the decree in the lower court on the amount just stated.

NICHOLLS, C. J., absent.